IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TENNESSEE

| IN THE MATTER OF THE SEARCH OF THE CELLULAR TELEPHONE ASSIGNED CALL NUMBER 909-477-0031 WITH INTERNATIONAL MOBILE EQUIPMENT IDENTITY "353969100530731" | Case No. 1:20-cr-136 <br><br> **Filed Under Seal** |
|---|---|

## AFFIDAVIT IN SUPPORT OF
## AN APPLICATION FOR A SEARCH WARRANT

I, Rodd Watters, Special Agent of the Tennessee Bureau of Investigation and Task Force Officer of the Drug Enforcement Administrations, being duly sworn, deposed and state the following:

## INTRODUCTION AND AGENT BACKGROUND

1. I make this affidavit in support of an application for a search warrant under Federal Rule of Criminal Procedure 41 and 18 U.S.C. §§ 2703(c)(1)(A) for information about the location of the cellular telephone assigned call number 909-477-0031 with International Mobile Equipment Identity "353969100530731" with listed subscriber as a Courtney WILLIAMS ("**Target Cell Phone #8**") with a listed address of 10130 Foothill Blvd. Unit 417, Rancho Cucamonga California, 91730, whose service provider is Verizon Wireless, a wireless telephone service provider whose legal compliance center is headquartered at 180 Washington Valley Road, Bedminster NJ, 07921. **Target Cell Phone #8** is described herein and in Attachment A, and the location information to be seized is described herein and in Attachment B.

2. Because this warrant seeks the prospective collection of information, including cell-site location information, that may fall within the statutory definitions of information collected by a "pen register" and/or "trap and trace device," *see* 18 U.S.C. § 3127(3) & (4), the requested warrant is designed to also comply with the Pen Register Act. *See* 18 U.S.C. §§ 3121-3127. The

requested warrant therefore includes all the information required to be included in an order pursuant to that statute. *See* 18 U.S.C. § 3123(b)(1).

3. I am an investigative or law enforcement officer of the United States within the meaning of Title 18, United States Code, Section 2510(7), in that I am empowered by law to conduct investigations of and to make arrests for offenses enumerated in Title 18, United States Code, Section 2516. I have been employed as a Special Agent with the Tennessee Bureau of Investigation, since September 15, 1998. I have been assigned as an investigator in the field of narcotics investigations for more than twenty two (22) years. I am currently assigned as a Task Force Officer (TFO) for the Drug Enforcement Administration (DEA) Chattanooga Resident Office. I have been a Task Force Officer for approximately four (4) years. During my tenure as an investigator assigned to narcotics investigations, I have gained a working knowledge of narcotics trafficking methods and techniques. My present duties include the investigation of violations of state and federal law by individuals involved in the sale and distribution of controlled substances.

4. During my experiences and tenure as a Narcotics Investigator and Task Force Officer, I have investigated and participated in the investigations of organized criminal groups violating drug trafficking laws. As part of my official duties, I have utilized most traditional law enforcement techniques, including visual surveillance, interviewing of witnesses, the execution of search warrants, the use of cooperating witnesses, the seizure of drug evidence, the controlled purchases of drug evidence, court authorized pen registers, court authorized interceptions of wire communications, the grand jury, and undercover techniques. I have debriefed numerous cooperating defendants and confidential informants regarding the habits, practices, methods and general behavior of criminal groups engaged in organized criminal activity. I have personally

Page **2** of **12**

Case 1:20-mj-00136-CHS   Document 4   Filed 09/15/20   Page 2 of 15   PageID #: 9

participated in Title III wire intercept investigations, including investigations involving large-scale drug trafficking organizations and drug traffickers. I have received specialized training in conducting drug investigations and have attended numerous conferences and lectures featuring government attorneys and law enforcement officials. Over the course of my career, I have participated in numerous arrests of known drug traffickers and their associates. This experience has afforded me an opportunity to observe and investigate methods, schemes, and operations used by organized groups, including the use of cellular telephones to conduct their transactions. In addition, I have participated in investigations concerning the concealment of proceeds of controlled substances, including assets, monies, bank records, and the identification of co-conspirators through the use of drug ledgers, telephone toll records, telephone bills, photographs, and financial records. These investigations have resulted in the arrest of individuals who have smuggled, received, and/or distributed controlled substances, including methamphetamine, cocaine hydrochloride, cocaine base, heroin, and marijuana, as well as the seizure of controlled substances and the proceeds of the sale of these controlled substances. I know based upon my training and experience, that narcotics traffickers and money laundering organizations routinely utilize several operational goals: first, the successful facilitation of the organization's illegal activities that consist of the transportation and distribution of controlled substances and subsequent collection of the proceeds of that illegal activity; and second, minimizing the exposure of organization members, particularly those operating in management roles, from investigation and prosecution by law enforcement.

5. The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses. This affidavit is intended

to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

6. Based on the facts set forth in this affidavit, there is probable cause to believe that violations of Title 21, United States Code, Sections 841(a)(1), 846, and 843(b) and Title 18 United States Code, Section 1956 and 1957 have been committed, are being committed, and will be committed by Courtney WILLIAMS. There is also probable cause to believe that the location information described in Attachment B will constitute evidence of these criminal violations and will lead to the identification of individuals who are engaged in the commission of these offenses.

7. The court has jurisdiction to issue the proposed warrant because it is a "court of competent jurisdiction" as defined in 18 U.S.C. § 2711. Specifically, the Court is a district court of the United States that has jurisdiction over the offense being investigated, *see* 18 U.S.C. § 2711(3)(A)(i).

## **PROBABLE CAUSE**

8. The United States, including the Drug Enforcement Administration, is conducting a criminal investigation of James MARTIN aka "Fat Deuce" and others regarding possible violations of Title 21, United States Code, Sections 841(a)(1), 846, and 843(b).

9. Since approximately April 2020, the Drug Enforcement Administration and the Tennessee Bureau of Investigation have been involved in an investigation involving James MARTIN aka "Fat Deuce" and others. Through this investigation, MARTIN has been identified as a distributor and source of supply of illegal narcotics, primarily fake oxycodone pills likely containing fentanyl and/or fentanyl analogues in Tennessee. MARTIN is a high-ranking validated member of the 5-2 Bloodstone Villain street gang in Chattanooga, Tennessee. MARTIN has a violent criminal history including attempted robbery and aggravated burglary. In 2019, MARTIN

Page 4 of 12

Case 1:20-mj-00136-CHS   Document 4   Filed 09/15/20   Page 4 of 15   PageID #: 11

was convicted of possession with intent to distribute marijuana in United States District Court for the Eastern District of Tennessee.

10. In June of 2020, your affiant contacted DEA TFO and United States Postal Inspector Jed Hutchison regarding addresses being utilized by MARTIN. Your affiant provided TFO/Inspector Hutchinson with these addresses to be placed on "watch lists" for suspicious packages being mailed to and from these addresses. TFO/Inspector Hutchison advised that he would inform your affiant if anything suspicious was noted.

11. On July 15, 2020, TFO/Inspector Hutchison intercepted a suspicious package addressed to Courtney WILLIAMS at 10130 Foothill Blvd. #417 in Rancho Cucamonga California 91730. The return address was listed as 4511 St. Elmo Avenue, Chattanooga, Tennessee, an address utilized by MARTIN (listed on his driver's license). Your affiant had previously requested TFO/Inspector Hutchison place this address on a "watch list." Following a positive K-9 alert for the odor of narcotics, Inspector Hutchison obtained and executed a federal search warrant on the package. The package contained $24,780 in U.S. Currency (all $20 bills). Upon review of postal records, Inspector Hutchison located records for approximately 35 similar packages. Based on your affiant's training and experience, this is indicative of money laundering of proceeds of illegal activity and/or payment for illegal contraband, such as narcotics.

12. On August 5, 2020, TFO/Inspector Hutchison informed your affiant that a package addressed to 2607 Curtis Street (an address place on "watch list" and utilized by MARTIN) had arrived in Chattanooga and was scheduled to be delivered at approximately 11:00 am. TFO Hutchison advised that this package was sent from San Diego, California, weighed approximately 3.5625 pounds, and was addressed to a Rich SANTORE at 2607 Curtis Street in Chattanooga,

Tennessee. Based on your affiant's training, experience, and the investigation thus far, this is likely a fake name. Such is common when illegal contraband is shipped via the U.S. Postal Service.

13. Your affiant, along with TBI SA Moon and other DEA Chattanooga Agents, established surveillance on the 2607 Curtis Street at approximately 10:50 am. At approximately 11:01 am, your affiant observed a silver Dodge Magnum pull up and park near the front of the residence at 2607 Curtis Street. Approximately 30 seconds later your affiant observed a black Jeep pull into the driveway of 2607 Curtis Street and park. Upon conducting a drive by of the residence, TFO Watters obtained the vehicle registration for the black Jeep as being Tennessee 2M73J1—the same vehicle observed during the transaction between MARTIN and CLEMENTS on May 18, 2020, and registered to Lakennya CUMMINGS at 2607 Curtis Street, Chattanooga Tennessee. At approximately 11:15 am, your affiant observed the mail carrier arrive at the residence, remain for a short period, and then drive to the next address. Your affiant observed someone walking from the front of the residence toward the mailbox, and observed the legs of this person saw them to be wearing light colored blue jeans.

14. At approximately 11:18 am, the black Jeep left the residence. The Jeep drove directly past your affiant. CUMMINGS was the driver. Agents followed the Jeep directly to the Children's Hospital Kennedy Outpatient Center. CUMMINGS exited the Jeep and was wearing light colored blue jeans and a white tank top. Both CUMMINGS and a small child were observed walking into the Outpatient Center. TFO Hixson conducted a walk-by of the vehicle and observed the postal package sitting in the back seat behind the driver's seat. TFO Hixson advised that the package had been opened.

15. On August 7, 2020, TFO/Inspector Hutchison notified your affiant that two packages were inbound to Chattanooga from California. TFO Hutchinson informed your affiant

Page **6** of **12**

Case 1:20-mj-00136-CHS   Document 4   Filed 09/15/20   Page 6 of 15   PageID #: 13

that both packages were going to addresses that had been added to "watch lists" in relation to this investigation. Both packages were shipped from La Verne, California. One package was addressed to "Jason Martin" 1103 North Orchard Knob Avenue Chattanooga, Tennessee. The second parcel addressed to 4511 St. Elmo Avenue Chattanooga, Tennessee. Agents established surveillance at both of these addresses to await delivery of these packages.

16. DEA conducted surveillance and observed MARTIN enter the residence at 1103 North Orchard Knob Avenue prior to the package delivery. The package was delivered at approximately 11:09 am. MARTIN left the residence at approximately 11:15 am. The postal carrier advised an African American Male, in his thirties accepted the package on the front porch of the residence. This description is consistent with MARTIN. At approximately 11:32 am, surveillance units observed MARTIN arrive at 4511 St. Elmo Avenue. The second package was delivered to this address at 11:42 hours. MARTIN accepted the package, never went into the residence, got in his vehicle and left. Based on training, experience, and the investigation thus far, your affiant believe this behavior is indicative of receipt of illegal contraband through the US Mail.

17. On August 24, 2020, TFO/Inspector Hutchison intercepted an additional suspicious package addressed to Courtney WILLIAMS at 10130 Foothill Blvd. #417 in Rancho Cucamonga California 91730. The return address on this package was listed as 4513 St. Elmo Avenue, Chattanooga, Tennessee which is directly next door to an address associated with and previously utilized by MARTIN to receive packages. TFO/Inspector Hutchison provided your affiant a photograph of the individual dropping off the package at the post officer. The individual depicted in the photograph was James MARTIN aka "Fat Deuce."

18. Following a positive K-9 alert for the odor of narcotics, Inspector Hutchison obtained and executed a federal search warrant on the package. The package contained $20,800 in

U.S. Currency (all $20 bills). Based on your affiant's training and experience, this is indicative of money laundering of proceeds of illegal activity and/or payment for illegal contraband, such as narcotics. This package was placed back in the USPS mail stream for delivery to the addressed recipient.

19. On August 25, 2020, your affiant contacted SA Edward Perez, DEA Riverside California, regarding the package being sent to the 10130 Foothill Boulevard #417 in Rancho Cucamonga, California, 91730. SA Perez advised that he and other agents would conduct surveillance on the delivery of the package, which was scheduled for August 26, 2020. On August 26, 2020, your affiant made contact with SA Perez. SA Perez informed your affiant that agents with his office along with agents from the United States Postal Inspection Service established surveillance at the address listed on the mailed package of 10130 Foothill Boulevard #417 in Rancho Cucamonga, California, 91730. Your affiant was informed by SA Perez that this location had an established mail drop box that residents would come to pick up packages for their respective addresses. TFO Perez informed your affiant that the package was scheduled to be delivered to the drop box at 11:45 am Pacific Standard Time (PST).

20. SA Perez later notified your affiant that upon delivery of the package to the drop box, agents conduct surveillance for several hours and positively identified, based on driver's license and probation photos, Courtney WILLIAMS as the person picking up the package. WILLIAMS was observed taking the package to her vehicle, described as a 2017 black Toyota Camry with the last three of the registration being 384, and leaving the complex. SA Perez advised that surveillance attempted to follow WILLIAMS but eventually lost her in traffic and surveillance terminated.

21. SA Perez also informed your affiant that upon serving a subpoena management office for the residence located at 10130 Foothill Boulevard #417 in Rancho Cucamonga, California he was informed the resident was Courtney WILLIAMS. WILLIAMS had also listed the telephone number for herself as 909-477-0031 (Target Telephone #8).

22. Your Affiant believes that based upon the aforementioned probable cause, that **Courtney WILLAMS** is using **Target Cell Phone #8** to facilitate her and her associates drug trafficking activities and in the furtherance of this drug conspiracy. I believe that obtaining the requested geo-location of **Target Cell Phone #8** through Verizon Wireless will allow investigators to locate the subject(s) utilizing the Target Cell Phone without jeopardizing the investigation and therefore investigators will more likely be successful in obtaining the necessary evidence to further their investigation. I further believe that the requested search warrant will enable investigators to more effectively collect evidence of the crimes being committed by the targeted organization, identify locations utilized by the organization to facilitate their criminal activities, identify co-conspirators and their locations.

23. In my training and experience, I have learned that Verizon Wireless is a company that provides cellular telephone access to the general public. I also know that providers of cellular telephone service have technical capabilities that allow them to collect and generate information about the locations of the cellular telephones to which they provide service, including E-911 Phase II data, also known as GPS data or latitude-longitude data and cell-site data, also known as "tower/face information" or cell tower/sector records. E-911 Phase II data provides relatively precise location information about the cellular telephone itself, either via GPS tracking technology built into the phone or by triangulating on the device's signal using data from several of the provider's cell towers. [Cell-site data identifies the "cell towers" (i.e., antenna towers covering

specific geographic areas) that received a radio signal from the cellular telephone and, in some cases, the "sector" (i.e., faces of the towers) to which the telephone connected. These towers are often a half-mile or more apart, even in urban areas, and can be 10 or more miles apart in rural areas. Furthermore, the tower closest to a wireless device does not necessarily serve every call made to or from that device. Accordingly, cell-site data is typically less precise that E-911 Phase II data.

24. Based on my training and experience, I know that Sprint can collect E-911 Phase II data about the location of the Target Cell Phones, including by initiating a signal to determine the location of the Target Cell Phones on Sprint network or with such other reference points as may be reasonably available.

25. Based on my training and experience, I know that Verizon Wireless can collect cell-site data about the Target Cell Phones. Based on my training and experience, I know that for each communication a cellular device makes, its wireless service provider can typically determine: (1) the date and time of the communication; (2) the telephone numbers involved, if any; (3) the cell tower to which the customer connected at the beginning of the communication; (4) the cell tower to which the customer connected at the end of the communication; and (5) the duration of the communication. I also know that wireless providers such as Verizon Wireless typically collect and retain cell-site data pertaining to cellular devices to which they provide service in their normal course of business in order to use this information for various business-related purposes.

**AUTHORIZATION REQUEST**

26. Based on the foregoing, I request that the Court issue the proposed search warrant, pursuant to Federal Rule of Criminal Procedure 41 and 18 U.S.C. § 2703(c).

27. I further request, pursuant to 18 U.S.C. § 3103a(b) and Federal Rule of Criminal Procedure 41(f)(3), that the Court authorize the officer executing the warrant to delay notice until 90 days after the collection authorized by the warrant has been completed. There is reasonable cause to believe that providing immediate notification of the warrant may have an adverse result, as defined in 18 U.S.C. § 2705. Providing immediate notice to the subscriber or user of the Target Cell Phones would seriously jeopardize the ongoing investigation, as such a disclosure would give that person an opportunity to destroy evidence, change patterns of behavior, notify confederates, and flee from prosecution. *See* 18 U.S.C. § 3103a(b)(1). As further specified in Attachment B, which is incorporated into the warrant, the proposed search warrant does not authorize the seizure of any tangible property. *See* 18 U.S.C. § 3103a(b)(2). Moreover, to the extent that the warrant authorizes the seizure of any wire or electronic communication (as defined in 18 U.S.C. § 2510) or any stored wire or electronic information, there is reasonable necessity for the seizure for the reasons set forth above. *See* 18 U.S.C. § 3103a(b)(2).

28. I further request that the Court direct Verizon Wireless to disclose to the government any information described in Attachment B that is within the possession, custody, or control of Sprint. I also request that the Court direct Verizon Wireless to furnish the government all information, facilities, and technical assistance necessary to accomplish the collection of the information described in Attachment B unobtrusively and with a minimum of interference with Sprint services, including by initiating a signal to determine the location of the Target Cell Phones on Sprint network or with such other reference points as may be reasonably available, and at such intervals and times directed by the government. The government shall reasonably compensate Verizon Wireless for reasonable expenses incurred in furnishing such facilities or assistance.

Page **11** of **12**

Case 1:20-mj-00136-CHS   Document 4   Filed 09/15/20   Page 11 of 15   PageID #: 18

29. I further request that the Court authorize execution of the warrant at any time of day or night, owing to the potential need to locate the Target Cell Phones outside of daytime hours.

30. I further request that the Court order that all papers in support of this application, including the affidavit and search warrant, be sealed until further order of the Court. These documents discuss an ongoing criminal investigation that is neither public nor known to all of the targets of the investigation. Additionally, this Affidavit contains statements of co-conspirators in the investigation which, if revealed at this time, may jeopardize the safety of said individuals or result in witness tampering or intimidation. Accordingly, there is good cause to seal these documents because their premature disclosure may seriously jeopardize that investigation.

Respectfully submitted,

Rodd Watters
Task Force Officer
Drug Enforcement Administration

Subscribed and sworn to before me on Septbr 15, 2020

HONORABLE CHRISTOPHER H. STEGER
UNITED STATES MAGISTRATE JUDGE

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TENNESSEE

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF THE CELLULAR TELEPHONE ASSIGNED CALL NUMBER 909-477-0031 WITH INTERNATIONAL MOBILE EQUIPMENT IDENTITY "353969100530731" | Case No. 1:20-cr-136<br><br>**Filed Under Seal** |

## ATTACHMENT A

### Property to Be Searched

1. The cellular telephones assigned call number 909-477-0031 with International Mobile Subscriber Identity "353969100530731" with listed subscriber as a with listed subscriber as a Courtney WILLIAMS and utilized by Courtney WILLIAMS ("**Target Cell Phone #8**"), whose service provider is Verizon Wireless, a wireless telephone service provider whose legal compliance center is headquartered at 180 Washington Valley Road, Bedminster NJ, 07921.

2. Records and information associated with the **Target Cell Phone #8 t**hat are within the possession, custody, or control of Verizon Wireless: including information about the location of the cellular telephones if they are subsequently assigned a different call number.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TENNESSEE

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF THE CELLULAR TELEPHONE ASSIGNED CALL NUMBER 909-477-0031 WITH INTERNATIONAL MOBILE EQUIPMENT IDENTITY "353969100530731" | Case No. 1:20-cr-136<br><br>**Filed Under Seal** |

## ATTACHMENT B

**Particular Things to be Seized**

I.    **Information to be Disclosed by the Provider**

All information about the location of the **Target Cell Phone #8** described in Attachment A for a period of thirty days, during all times of day and night. "Information about the location of the **Target Cell Phone #8**" includes all available E-911 Phase II data, GPS data, latitude-longitude data, and other precise location information, as well as all data about which "cell towers" (i.e., antenna towers covering specific geographic areas) and "sectors" (i.e., faces of the towers) received a radio signal from the cellular telephones described in Attachment A.

To the extent that the information described in the previous paragraph (hereinafter, "Location Information") is within the possession, custody, or control of Verizon Wireless. Verizon Wireless is required to disclose the Location Information to the government. In addition, Verizon Wireless must furnish the government all information, facilities, and technical assistance necessary to accomplish the collection of the Location Information unobtrusively and with a minimum of interference with Verizon Wireless services, including by initiating a signal to determine the location of the **Target Cell Phone #8** on Verizon Wireless's network or with such other reference points as may be reasonably available, and at such intervals and times directed by the government.

Page **1** of **2**

The government shall compensate Verizon Wireless for reasonable expenses incurred in furnishing such facilities or assistance.

This warrant does not authorize the seizure of any tangible property. In approving this warrant, the Court finds reasonable necessity for the seizure of the Location Information. *See* 18 U.S.C. § 3103a(b)(2).

## II.    Information to Be Seized by the Government

**IF LOCATION INFORMATION IS EVIDENCE OF A CRIME:**

All information described above in Section I that constitutes evidence of violations of Title 21, United States Code, Sections 841(a)(1), 846, and 843(b) involving James MARTIN, Courtney WILLIAMS, or unidentified subject(s).

Law enforcement personnel (who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, agency personnel assisting the government in this investigation, and outside technical experts under government control) are authorized to review the records produced by the Provider in order to locate the things particularly described in this Warrant.